IRWIN v. BROOKS.

1. Five commissioners in dower met, examined the land and failed to agree; the Probate judge ruled them and required a return to be made, but only three were served, and these three thereupon met without notice to the others, and made a return. *Held*, that the return was sufficient.

2. The parties in interest are not allowed as matter of right to assail a return of commissioners in dower, where it has been fairly made and is unaffected

by fraud, or error of law or fact; but the court may withhold confirmation from a return which, in its judgment, from any cause, does injustice.

3. A decree of a Probate judge not approving, but, nevertheless, confirming a return of such commissioners, reversed upon the ground that the Probate judge erred in supposing that he was without power to set the return aside.

4. The law now of force regulating costs governs an action commenced in 1872, but not determined prior to the act of 1880. 17 *Stat.* 296. Therefore, the demandant of dower in lands of her husband aliened during coverture is entitled to her costs, although the dower was not demanded before the institution of her suit.

---

Before KERSHAW, J., Newberry, November, 1880.

The opinion states the case. The Circuit decree was as follows:

This was an appeal from decree of the Probate Court confirming the return of commissioners appointed in that court, for the admeasurement of petitioner's dower in certain lands which are in the possession of the defendant. Reference will be had for the facts to the records in the case, and they need not here be repeated.

The Probate judge says in his decree: " It does seem to me to be the intention of the law that the dowress must, if possible, be provided with a present means of enjoyment of her dower, and I intended to send this case back to the commissioners, coupled with such instructions as would change their return, so that at least some more cultivatable land would be set out to her; but after more mature reflection and consideration of the testimony, I am reluctantly forced to another conclusion: reluctantly, because, while I feel assured that the return here confirmed, does not give the dowress the full measure of her right, still the case made is not sufficient to set aside the return of commissioners where no fraud nor error of principle is shown."

The position taken is that the return of commissioners is conclusive and beyond the control of the court, unless they have been guilty of fraud, or proceeded upon erroneous principles. That though manifest injustice may have been done by the commissioners, and this is clearly seen by the court, yet the return may not be interfered with, except in cases of fraud or erroneous principles. This appears to me to be an error in the

Probate judge. The return is under his control, and he may set it aside and direct an assignment *de novo* to be made by the commissioners, whenever manifest injustice appears to him to have been done.

In directing such new assignment, he may and should indicate to the commissioners the objections he finds to exist in the former return. Care should be taken to have each commissioner duly notified to be present at all meetings and conferences of the commissioners, and proper efforts should be made to procure their attendance. The judge of Probate has ample authority to compel such attendance, and the performance of other duties required by the writ, by attachment, and other punishment for contempt, if necessary. The unexplained absence from their deliberations of any of the commissioners might of itself constitute a valid objection to a return, especially when they had not all been properly notified to be present as in this case.

The Probate judge has the same powers which the judge of the Court of Common Pleas had under the act of 1876, of which chapter 113 of the General Statutes is almost a literal transcript, only substituting the Probate Court for the Court of Common Pleas. That court had full control of the return of the commissioners in dower, and could correct any mistakes therein of fact or law, just as the chancellor could in the Courts of Equity. *Beaty* v. *Hearst,* 1 *McM.* 31 ; *Gibson* v. *Marshall,.* 5 *Rich. Eq.* 261. The latter case is especially instructive in this ; for the court says there: " It is not necessary that there should be corruption or misfeasance on the part of the commissioners ; it is enough to set aside their return, that they have mistaken the extent and value of the interest or shares of the parties concerned." The Probate judge is right in supposing that the dowress should " be provided with a present means of enjoying her dower." It is intended as a provision for her support and maintenance, and when land is specifically set apart for that purpose, it should always, if practicable, include a proper portion of arable or other productive lands. So stoutly has this principle been insisted on in some instances, that the widow has been held not dowable of wild and unimproved lands ; but the law here is more favorable to the widow.

It is claimed by the respondent that the petitioner should not be allowed costs, according to what is said in section 333 of the code of procedure. That section was repealed by the act of 1873, 15 *Stat.* 500, § 17. The general rule is, that the demandant in dower is entitled to her costs.

It is adjudged, that the appeal be sustained, and the order of the judge of Probate confirming the return of the commissioners in dower be reversed; that the case be remanded to the Probate Court for such further and other proceedings as may be proper to complete the assignment of dower to the petitioners, in accordance with the principles herein declared; also, that the defendant pay the costs of this appeal.

*Mr. L. J. Jones,* for appellant, cited 2 *Mill Con. R.* 254; 4 *McC.* 346; 1 *Bay* 454; 4 *McC.* 346; 5 *S. C.* 433; 1 *McM.* 33; 6 *Rich. Eq.* 215; *Code,* *§ 333; 15 *Stat.* 500, § 17.

*Mr. T. S. Moorman,* contra, cited *Dudley* 127; 1 *Bay* 495; 2 *Id.* 449; 1 *McM.* 31; 5 *Rich. Eq.* 259; 3 *Wait Pr.* 456.

March 20th, 1883. The opinion of the court was delivered by

MR. JUSTICE MCGOWAN. Susan C. Irwin, then Smith, on October 28th, 1871, filed a petition in the Probate Court for Newberry county, claiming dower in a certain tract of land, containing 475 acres, then in the possession of defendant. A. M. Smith, the husband of the petitioner, then lately dead, had been seized in fee of the land during the coverture of the petitioner, but it seems that it had been sold by the sheriff in his life-time. The right to dower was not seriously contested, and the only questions in the case arise in relation to the mode of procedure in laying it off to her. On February 24th, 1872, a writ was issued for the admeasurement of the dower, and the commissioners made return, laying off as dower a part of the said land, but the return was set aside on the ground that the commissioners had included in the land laid off their estimate of the petitioner's share of the rents and profits.

On January 17th, 1878, the petitioner filed a supplemental petition and a new writ for the admeasurement of dower was

issued to five commissioners, viz.: W. W. Wallace, D. C. Crow, M. B. Lipscomb, J. W. Williams and J. T. Kelly, who made return that they "could not agree." On May 3d, 1878, the Probate judge made an order that "the commissioners make a formal and legal return within ten days from the date of the order." All the commissioners (except Lipscomb, who lived in another county,) had notice of this order, but no return was made as directed. On July 26th, the Probate judge made another order, requiring the four commissioners who had been served with the previous order, "to show cause why they should not be attached for contempt in refusing to obey said order." This last rule was served on only three of the commissioners, viz.: W. W. Wallace, D. C. Crow and J. T. Kelly, and these alone made return on August 1st, "laying off by metes and bounds $156\frac{1}{4}$ acres of land to the petitioner for dower," and the rule against them was discharged.

To this return the petitioner filed exceptions: "First, that all of the commissioners were not notified of the time and place of meeting when the dower was assessed; and second, that the $156\frac{1}{4}$ acres set off as dower is not one-third of the whole land, nor a just, fair and impartial division thereof—the remaining two-thirds being worth at least three times the value of the said one-third." Testimony was introduced before the Probate judge by the petitioner to set aside the return, and by the defendant to sustain it. The Probate judge with much hesitation confirmed the return. Upon appeal to the Court of Common Pleas, the Circuit judge reversed this ruling, and from his order the defendant appeals to this court upon the following grounds:

1. "Because his Honor erred in reversing the decree of the Probate Court, confirming the return of the commissioners, which was made after several examinations of the land, and after mature consideration of their duty in the premises, and was sustained by the evidence of many witnesses taken before the Probate Court at the instance of the petitioner.

2. "Because his Honor erred in reversing the decree of the Probate Court, confirming the return of the commissioners, when it did not appear in any way that they were guilty of any fraud or proceeded upon erroneous principles.

3. " Because his Honor erred in deciding that the defendant should pay the costs of this appeal, upon the ground that the seventeenth section of the act of 1873, page 500, repealed section 333 of the code, which declares that the dowress shall not recover costs when she applies, as in this case, for dower in the lands aliened in the husband's life-time, ' unless it appears (as it does not in this case) that the dower was demanded before the commencement of the action and was refused.' This suit was commenced in 1871, and the repeal of said section 333 after that time, cannot affect this case, and his Honor therefore had no power to order the defendant to pay the costs right in the face of the positive injunction of the statute."

If there was nothing else in the case but the fact that the return was signed by only three of the five commissioners, we do not think that of itself would be sufficient to set it aside. The power is given to the commissioners, " or a majority of them." All the commissioners seem to have gone upon the land and to have had conferences upon the subject prior to the making of the return, but at the time final action was taken and the return made, two of them were not present for the reason that they had not been notified of the time and place of meeting. It does not appear that they were intentionally excluded. The other three commissioners were obliged to make return promptly, on pain of being attached for contempt, and knowing the views of the absent commissioners, they proceeded to purge the contempt by making the return. We suppose the absence of the signatures of two of the commissioners might, under these circumstances, be regarded by the Probate judge as not more significant than if the two had made written protest against the return. It has been held by this court " that a return of the majority of the commissioners in dower must stand, unless fraud or error of law or fact be shown, and this although the minority dissent in writing." *Stewart* v. *Blease*, 5 *S. C.* 433.

When, at the instance of the parties, commissioners are appointed by the court to lay off dower, they become a part of the machinery provided by law for that purpose. They are selected, and their judgment invoked on account of their supposed fitness. They take a solemn oath to discharge the duty,

and when they have exercised their best judgment fairly, honestly and impartially, and embodied that judgment in a return in proper form, we think that return is something more than a mere estimate of a certain number of persons, which may be overthrown by the opinions of the same number of other persons examined as witnesses. It is a record. The commissioners are in one sense the agents of the parties, who are not allowed as matter of right to assail the return, if it has been fairly made and is the judgment of the commissioners, unaffected by fraud or error of law or fact. If the law were otherwise, controversies as to value resting only in opinion, would never end. *Buckler* v. *Farrow, Rich. Eq. Cas.* 180; *Stewart* v. *Blease,* 5 *S. C., supra.*

In the case from Richardson, which was in reference to a return in partition, the court says: "The commissioners are required by law to divide the land, if it be practicable to do so without injustice to any of the parties, and they are also required to make a return of the entire valuation. * * * If it appear on such a return made that there has been mistake, fraud or corruption, no doubt the proceedings would be set aside, and a new writ of partition ordered. But nothing of that sort is pretended in this case. * * * The commissioners are the agents of the parties, acting under the authority of the court, and they are as much bound by their return made in due form, fairly and impartially, as a plaintiff and defendant would be by an award of arbitrators made under a rule of court," &c.

But the better opinion seems to be that, whether the parties themselves may or may not demand it as a right, the court which issued the process still has control of it, and in the exercise of a sound discretion may withhold confirmation from a return which, in its judgment, does injustice from any cause. It seems to be considered that, to complete the matter, both the return of the commissioners and the confirmation of the court are necessary. *Payne* v. *Payne, Dud. Eq.* 127; *Beaty* v. *Hearst,* 1 *McM.* 31; *Gibson* v. *Marshall,* 5 *Rich. Eq.* 262. In the last case cited Chancellor Wardlaw said: "It is not necessary that there should be any corruption or misfeasance on the part of the commissioners; it is enough to set aside the return that

they have mistaken the extent and value of the interests or shares of the parties concerned. Their return is intended to satisfy the conscience and judicial discretion of the chancellor, and any circumstance exhibiting error on their part may justify him in refusing to do that which seems to him to be inequitable."

In the case before us no such thing as "mistake, fraud or corruption" was charged, only a mistake in judgment on the part of the commissioners, and in accordance with the principles above announced, if the Probate judge had approved the action of the commissioners and simply confirmed the return, we would have been inclined to sustain it. But he seems to have confirmed it contrary to his judgment, in the view that as no fraud or error of principle was shown, he had not the power to withhold his confirmation. In his decree he says: "I intended to send this case back to the commissioners, coupled with such instructions as would change their return, so that at least some more cultivatable land would be set out to her; but after more mature reflection and consideration of the testimony, I am reluctantly forced to another conclusion: reluctantly, because while I feel assured that the return here confirmed does not give the dowress the full measure of her right, still the case made is not sufficient to set aside the return of commissioners when no fraud nor error of principle is shown." We agree with the Circuit judge that in this the Probate judge erred in underrating his power.

In regard to the costs: As the case has to go back, it would seem to be premature to determine now the question of costs, but the matter is made the subject of one of the exceptions.

It is true that subdivision 6, of section 333, of the original code (1870) provides that "in an action hereafter brought to recover dower, before admeasurement, of real property aliened by the husband, the plaintiff shall not recover costs, unless it appear that the dower was demanded before the commencement of the action and was refused." This section was stricken out by the amendments to the code in 1873 (15 *Stat.* 500), and certain other provisions inserted in its place, but in the section striking out it is "provided that nothing herein contained shall apply to suits commenced and existing at the time of the passage of this act,

wherein the costs shall be the same as allowed previous to the passage hereof." This action was commenced in 1871, after the code but before the said amendment, and if there was no other law upon the subject, the costs in this case would probably have to be taxed under the provisions of the original code, unaffected by the amendment of 1873. But in 1880 the legislature passed an act covering the whole subject of costs, (*Gen. Stat.* §§ 2425–2446,) which in effect repealed the provisions of both the original code and the said amendment as to costs in cases for dower, and, as we understand it, this is now the only law of force upon the subject.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.